IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| DOUGLAS SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-1806-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| TILLAMOOK COUNTY, THOMAS E. DYE, in his individual and official capacities, TIM JOSI, in his official capacity, Lt. RON MADDOX, in his individual and official capacities, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

    Douglas Scott
    19595 Three Rivers Road
    Hebo, Oregon 97122

        Pro Se Plaintiff

    Robert S. Wagner
    Robert Beatty-Walters
    Miller & Wagner, LLP
    2210 N. W. Flanders Street
    Portland, Oregon 97210-3408

        Attorneys for Defendants

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff Douglas Scott alleges various claims concerning the treatment of his diabetes during his incarceration at Tillamook County Correctional Facility ("jail"). Scott failed to file an Amended Complaint to cure deficiencies in his original Complaint, as ordered by me when confirming his in forma pauperis status. Consequently, he is limited to his § 1983 claim against Tillamook County and his negligence claim against Tillamook County and the individual defendants.[1] Before the court is the Motion for Summary Judgment of all Defendants (#9). For the reasons below, I grant the motion and dismiss all claims with prejudice.

## FACTS

Scott was sentenced to serve ten days at the jail for resisting arrest. Scott's criminal defense attorney, Marci Trevino, wrote the Jail Commander, Lt. Ron Maddox, to confirm that the jail would be able to accommodate Scott's Type 1 diabetes during his incarceration. Scott used an insulin pump which needed to have the insulin refilled and the catheter, tubing, and infusion setting changed every two days. Lt. Maddox asked Trevino to have Scott bring everything with him that he would need for his diabetes while incarcerated.

Scott arrived at the jail on December 12, 2002 without the necessary medical equipment, other than his insulin pump and the insulin in the pump. He refused to sign a release for jail staff to obtain information from his physician about his diabetic condition. Because of this refusal to cooperate, the sentencing judge, the Honorable Rick W. Roll held a video hearing with Scott on the same day but refused to release him.

---

[1] On February 4, 2005, I dismissed Scott's equal protection and Americans with Disabilities Act claims.

Page 2 - OPINION AND ORDER

Jail staff tried to contact Scott's physician after Scott provided the physician's name. The staff was told that Scott had been banned from the physician's office. The staff tried to get information from Scott about his insulin requirements and dietary needs. They formulated a meal plan and kept glucose in the booking area in case Scott's blood sugar dropped.

On the evening of Scott's arrival, he significantly increased his dose of insulin administered through the insulin pump, knowing that he did not have any insulin to refill the pump. Scott claimed that the jail would have to let him out if he ran out of insulin. One of Scott's neighbors brought additional insulin to the jail for Scott's pump. Scott told the jail staff that he had new tubing in his car for the pump but would not let anyone go to his car to get the supplies.

Later that evening, at approximately 12:45 AM on December 13, 2002, Lt. Maddox was notified that Scott had run out of insulin. Lt. Maddox went to the jail at approximately 1:00 AM and found Scott lying on the floor of his cell. Scott could not be roused. He started to shake as if having a seizure. The jail staff immediately took him to the emergency room at Tillamook County General Hospital.

Scott was treated at the hospital and released to the custody of the jail staff. The emergency room physician was able to retrieve information from Scott's insulin pump which showed that Scott was giving himself large amounts of insulin in spite of blood sugars that were in the normal range. Scott had given himself nearly three times his normal hourly rate of insulin during the twelve hours he was at the jail. Scott could not give a straightforward explanation to the doctor of why he had used so much insulin. He kicked a nurse and hit a police officer. The physician concluded that Scott intentionally over-medicated himself while at the jail. The

physician changed Scott's insulin orders so that the jail staff would inject Scott with insulin rather than Scott medicating himself with the insulin pump.

The physician gave the jail staff specific instructions on insulin requirements and blood sugar monitoring. Once Scott was returned to the jail, he was monitored every ten to fifteen minutes until he was released on December 20, 2002. The jail staff established meal plans and monitored and recorded Scott's food intake. The jail staff was also able to obtain some of Scott's medical records through the District Attorney's Office.

Scott's blood sugar remained stable during the remainder of his incarceration. After returning from the hospital, Scott did not complain of any difficulties with his care or the treatment of his diabetes.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.  Constitutional Claim

Although defendants argue that Scott's § 1983 claim must be dismissed for failure to exhaust, I decline to address the argument due to Scott's debilitated state during the beginning of

Page 4 - OPINION AND ORDER

his incarceration. I will address the claim on the merits. Because Scott was serving a sentence at the jail, and was not a pretrial detainee, his constitutional claim of inadequate medical treatment is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. Further, because the claim is only against the County after I dismissed the individual defendants, it is a *Monell* claim. See Monell v. Department of Social Services of New York, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978).

The County contends that there is neither a municipal policy or custom nor a direct causal connection between the policy and Scott's constitutional deprivation that amounts to deliberate indifference toward his constitutional rights. The County further argues that Scott did not suffer a constitutional injury because he cannot establish that jail officials acted with deliberate indifference to a serious medical need.

The Eighth Amendment is violated if prison officials are deliberately indifferent to a prisoner's serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

> To establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test. First, there must be a demonstration that the prison official deprived the prisoner of the minimal civilized measure of life's necessities. Second, a prisoner must demonstrate that the prison official acted with deliberate indifference in doing so.
>
> A prison official acts with deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety. Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference. If a [prison official should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk. This subjective approach focuses only on what a defendant's mental attitude actually was. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment Rights.

Id. (internal citation and quotation omitted).

The evidence shows that Scott deliberately overdosed himself with insulin in a misguided attempt to be released from jail early. There is no evidence that the jail staff knew Scott's blood sugar was way out of balance until he became unresponsive. At that point, the jail staff immediately took Scott to the hospital for emergency treatment. Once he was stabilized, the jail staff followed the hospital's orders and administered Scott's insulin to him for the remainder of his incarceration.

On the record, I conclude that the jail staff did not deprive Scott of the minimal civilized measure of life's necessities. I further conclude that the jail staff was not deliberately indifferent to an excessive risk to Scott's health and safety. On the contrary, the jail staff did everything they could to try to facilitate Scott's treatment for diabetes during his incarceration. They allowed Scott to bring all of his supplies but he declined to do so. The jail staff tried to get information from Scott's doctor so that they could inject Scott with insulin. Scott declined to give a release to allow them to obtain the information. Once he became ill, the jail staff immediately took Scott for emergency care. For the remainder of Scott's incarceration, the jail staff followed the hospital's instructions concerning his insulin and diet. Scott suffered from no further problems once the jail staff had the information needed to care for him. Scott was not deprived of his Eighth Amendment rights.

As an alternative reason to grant summary judgment against this claim, I conclude that Scott has not raised a factual issue that the County was involved in a manner that would support liability against it. In <u>Monell</u>, the Court held that the word "person" in § 1983 includes municipalities and other local governing bodies which may be liable under any of three theories: (1) if an employee was acting pursuant to an expressly adopted official policy; (2) if an employee was acting pursuant to a longstanding practice or custom; or (3) if an employee was acting as a

Page 6 - OPINION AND ORDER

final policymaker.  Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004).  There is no evidence here to support any of these possible theories.

Accordingly, I grant summary judgment and dismiss Scott's Eighth Amendment claim.

II.     Negligence Claim

Scott alleges that defendants were negligent for failing to exercise reasonable care in providing medical care to him, thereby causing a foreseeable risk of injury.  Defendants contend that there is no evidence of negligent medical care and that any injury Scott suffered was the result of overdosing himself on insulin.

I agree that no reasonable jury could conclude that defendants were the factual cause of any injury Scott suffered due to his unwillingness to cooperate with the jail staff and his intentional overdosing of insulin in defiance of the criminal justice system's authority.  See Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP, 336 Or. 329, 340, 83 P.3d 322 (2004).  I grant summary judgment against the negligence claim.

## CONCLUSION

Motion for Summary Judgment of all Defendants (#9) is granted.  This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____1st_____ day of December, 2005.

                                                    /s/ Garr M. King
                                                  Garr M. King
                                                  United States District Judge